DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CERTIFIED PRIORITY RESTORATION**
a/a/o **CHERYL COAKLEY,**
Appellant,

v.

**UNIVERSAL INSURANCE COMPANY OF NORTH AMERICA,**
Appellee.

No. 4D21-374

[August 18, 2021]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward A. Garrison, Judge; L.T. Case Nos. 502019CC003953XXXXMB and 502020AP000026CAXXMB.

Gray R. Proctor of Kramer, Greene, Zuckerman, Green & Buchsbaum, P.A., Hollywood, for appellant.

Thomas A. Valdez and Vilma Martinez of Quintairos, Prieto, Wood & Boyer, P.A., Tampa, for appellee.

KUNTZ, J.

Certified Priority Restoration (CPR), an assignee of the insured, Cheryl Coakley, appeals the county court's order granting final summary judgment to the insurer, Universal Insurance Company of North America.

### *Background*

Coakley's property was damaged by water on November 14, 2018.[1] Coakley hired CPR to repair the property and assigned the right to recover insurance benefits under her homeowner's insurance policy to CPR. After

---

[1] CPR sued the same insurer in a separate action for alleged water damage to Coakley's residence sustained on November 5, 2018. We address the appeal of that lawsuit in our opinion released today in *Certified Property Restoration a/a/o Coakley v. Universal Insurance Company of North America*, Case. No. 4D21-245 (Fla. 4th Aug. 18, 2021).

repairing Coakley's property, CPR emailed the insurer a copy of the assignment of benefits and an invoice for $8,710.84.

The insurer responded that it did not receive a request "for prior authorization to exceed $3,000.00 or 1% of the policy Coverage A limits for reasonable emergency measures as provided for in your policy." It cited the following provisions from the insurance policy's "Special Provisions – Florida" endorsement:

> a. We will pay up to the greater of $3,000 or 1% of your Coverage A limit of liability for the reasonable costs incurred by you for necessary measures taken solely to protect covered property from further damage, when the damage or loss is caused by a Peril Insured Against.

> b. We will not pay more than the amount of a. above, unless we provide you approval within 48 hours of your request to us to exceed the limit in a. above. In such circumstance, we will pay only up to the additional amount for the measures we authorize.

> If we fail to respond to you within 48 hours of your request to us and the damage or loss is caused by a Peril Insured Against, you may exceed the amount in a. above only up to the cost incurred by you for the reasonable emergency measures necessary to protect the covered property from further damage.

Based on that endorsement, the insurer issued a $3,000 check to CPR. The front of the check contained the following remarks: "Dwelling, LO, MH COV A EMS Limit." CPR deposited the check.

After CPR did not receive full payment of its invoice, it filed a complaint against the insurer alleging breach of contract. The insurer answered the complaint and asserted several affirmative defenses, two of which are relevant. First, the insurer alleged that a valid accord and satisfaction under section 673.3111, Florida Statutes (2017), discharged CPR's claim. Second, the insurer alleged that CPR "failed to make a proper request to exceed the limits" as set forth in the "Special Provisions – Florida" endorsement.

The insurer moved for summary judgment based on these two affirmative defenses. The court held a hearing and granted the insurer's motion.

**Analysis**

In its initial brief, CPR states that the "court granted summary judgment solely on the issue of accord and satisfaction." But the court's order is silent about the basis of the ruling, and at the transcript page cited by CPR, the court did not limit the ruling to one affirmative defense.

In contrast, the insurer based its motion for summary judgment on two affirmative defenses. CPR also filed a motion for rehearing directed to the summary judgment order. In that motion, CPR stated that when it granted the summary judgment motion, the court "ruled: 1) That Plaintiff failed to make a request to exceed the available limits of coverage for reasonable emergency measures under the subject policy of insurance, and 2) Plaintiffs claims are barred by Section 673.3111, Florida Statutes (accord and satisfaction by instrument)."

But even if the court only relied on one of the two defenses as the basis of its ruling, the record permits us to address both. *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support judgment in the record.").

### i. *Accord and Satisfaction*

We first address the defense of accord and satisfaction. Generally, "[a]n accord and satisfaction results as a matter of law 'when the creditor accepts payment tendered on the expressed condition that its receipt is deemed to be a complete satisfaction'" of the debt. *United Auto. Ins. Co. v. Palm Chiropractic Ctr., Inc.*, 51 So. 3d 506, 509 (Fla. 4th DCA 2010) (quoting *St. Mary's Hosp., Inc. v. Schocoff*, 725 So. 2d 454, 456 (Fla. 4th DCA 1999)).

Section 673.3111 provides a statutory claim for accord and satisfaction by use of an instrument:

> (1) If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, the following subsections apply.

3

(2) [T]he claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a **conspicuous** statement to the effect that the instrument was tendered as full satisfaction of the claim.

§ 673.3111(1)-(2), Fla. Stat. (2017) (emphasis added).

The issue here is whether the insurer's $3,000 check contained a conspicuous statement that it was tendered as full satisfaction of CPR's claim. To be conspicuous, the term must be displayed so "a reasonable person against which it is to operate ought to have noticed it." § 671.201(10), Fla. Stat. (2017). Conspicuous terms include:

(a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

(b) Language in the body of a record or display in larger type than the surrounding text or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

§ 671.201(10)(a)-(b).

Here, the insurer agrees that the check did not include terms used as examples of conspicuous terms in section 671.201(10)(a)-(b). In fact, the insurer agrees that the check did not have language that would entitle it to an accord and satisfaction as a matter of law, such as "payment in full." *See, e.g., Palm Chiropractic Ctr., Inc.*, 51 So. 3d at 509.

Instead, the insurer relies on *St. Mary's Hospital, Inc. v. Schocoff*, 725 So. 2d 454, 456 (Fla. 4th DCA 1999) to support its position. In *Schocoff*, the plaintiff appealed a summary judgment for the insurer based on accord and satisfaction because the plaintiff received and deposited the insurer's check. 725 So. 2d at 455. Correspondence sent with the check stated, "no further benefits will be payable," and "the maximum for this type of service has been reached." *Id.* (emphasis removed). There, we explained that such language "makes explicit, without question, the insurer's position [that] there are no further benefits due under the policy and it does not intend to make any further payments." *Id.* at 456.

*Schocoff* does not support the insurer's position. Here, the correspondence stated that the insurer did not "receive or approve a

request" required by the policy. But it did not state that "no further benefits will be payable." Nor did the correspondence include a statement that $3,000 was the maximum amount payable.

Moreover, in *Schocoff*, we concluded that the language merely stated the insurer's position. We held that "nothing in that language standing alone . . . reasonably implies, much less expresses, that [the plaintiff], by its acceptance of the check, would be deemed to have agreed with the insurer's position." *Id.* As such, we reversed, concluding that summary judgment was not appropriate. *Id.*

As in *Schocoff*, the facts do not allow for the entry of summary judgment on the accord and satisfaction affirmative defense.[2]

### ii. The Insurer Paid the Maximum Amount Due Under the Policy

The insurer also moved for summary judgment based on its defense that it paid the maximum amount due under the policy. The policy, with the "Special Provisions – Florida" endorsement, required the insurer to pay CPR up to "the greater of $3,000 or 1%" of Coakley's liability limit for costs incurred taken "solely to protect property from further damage." But that limit could be increased in two circumstances. First, if the insurer approved a request to exceed the limit, the limit increased to the approved amount. Second, if the insurer failed to respond to a request to exceed the limit within 48 hours of the request, the amount increased "up to the cost incurred by [the insured] for the reasonable emergency measures necessary to protect the covered property from further damage." So if CPR did not ask to exceed the limit, then summary judgment was proper.

CPR's corporate representative testified that he knew the policy limit but did not know whether CPR requested authorization to exceed it. Instead, he relied on a provision in the assignment of benefits Coakley signed. Although the legibility of the document sent to the insurer is disputed, the assignment of benefits included a request to exceed the

---

[2] The parties discuss an opinion written by Chief Judge Mirman for an appellate panel of the Nineteenth Judicial Circuit. *See Toquon Servs. v. Universal Ins. Co. of N. Am.*, No. 18-AP-19, 2019 WL 12758075 (Fla. Cir. Ct. Sept. 24, 2019). We approve the Nineteenth Circuit's opinion in that case.

coverage limit.[3]  But the corporate representative also testified that the assignment of benefits was sent to the insurer with the invoice for the completed work.  So, if the provision in the assignment form operated as a request, CPR submitted the request after it exceeded the policy limit.

In sum, CPR failed to request the insurer allow it to exceed the $3,000 limit before submitting the invoice for the completed work.  And the insurer paid $3,000 to CPR.  Therefore, the circuit court correctly granted summary judgment to the insurer.

### Conclusion

The insurer sought and obtained summary judgment on two affirmative defenses.  It was not entitled to judgment on the accord and satisfaction defense.  But the record shows that it was entitled to judgment based on its defense that it paid the maximum due under the policy.  Based on the second affirmative defense, the court properly entered judgment for the insurer.

*Affirmed.*

DAMOORGIAN and ARTAU, JJ., concur.

*             *             *

**Not final until disposition of timely filed motion for rehearing.**

---

[3] The record includes a legible version, and paragraph 5 of the document states:

> Request to Exceed Cap. Client understands that Client's insurance policy may contain an arbitrary cap on services which requires additional approval. Should such a cap be contained in Client's policy, this term hereby operates as a direct request to Client's insurance company for approval to exceed such cap upon submission of this document.